UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re                                                    Chapter 13

Taghrid Merhi ,                                          Case No. 1-14-42691 (CEC)

                        Debtor.
----------------------------------------------------------------x


# DECISION


APPEARANCES:

Bruce Weiner                          Karamvir Dahiya
Rosenberg, Musso & Weiner, LLP        Dahiya Law Offices, LLC
26 Court Street, Suite 2211           75 Maiden Lane, Suite 506
Brooklyn, New York 11242              New York, NY 10038

*Counsel for Creditor*                *Counsel for Debtor*


CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on motion of a secured creditor, Ms. Georgette Kodsi ("Ms. Kodsi" or "Creditor"), seeking, pursuant to §§ 1307(c) and 362(d)(1), to dismiss the case of Taghrid Merhi (the "Debtor") or, alternatively, to vacate the automatic stay with respect to the Creditor's interest in real property located at 86 72nd Street, Brooklyn, New York 11209.[1] Because the Debtor has insufficient income to pay the amounts required to reorganize under Chapter 13, confirmation of the Debtor's Chapter 13 plan is denied, and the Creditor's motion to dismiss is granted.

## JURISDICTION

This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157(b)(2)(G), and (L), 28 U.S.C. § 1334, and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and 157(b)(2)(L). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Bankruptcy Rule 7052.

## BACKGROUND

The following facts are undisputed, except as otherwise indicated.

On February 7, 2008, the Creditor sold the Debtor real property located at 86 72nd Street, Brooklyn, New York 11209 (the "Property"). (Mot. to Dismiss, Case No. 14-42691-CEC, ECF No. 9 at ¶ 2.) In consideration for the Property, the Creditor took two notes, totaling $736,854.17, secured by mortgages on the Property. (Id.) Under the terms of both notes, the Debtor was obligated to make monthly payments of interest only, at a rate of 10%, for twenty-four months, beginning March 1, 2008 and ending February 1, 2010, and repay the full principal amount on March 1, 2010 (the "Maturity Date"). (Id.)

---

[1] Unless otherwise noted, statutory references are to the United States Bankruptcy Code, Title 11, U.S.C., and references to Rules are to the Federal Rules of Bankruptcy Procedure.

On January 7, 2010, the Creditor commenced a foreclosure action against the Debtor in Supreme Court, Kings County, Index No. 345/2010. (Mot. to Dismiss Ex. C, Case No. 14-42691-CEC, ECF No. 9-3.)  On July 26, 2013, Justice Sylvia G. Ash signed a Judgment of Foreclosure and Sale (the "Foreclosure Judgment") providing for the sale of the Property and the application of the proceeds to the Debtor's obligation to the Creditor. (Id.)  The Foreclosure Judgment is in the amount of $913,003.23, as of April 29, 2013, plus fees, costs, and interest accruing after that date. (Id. at p. 11.)

On September 30, 2013, the Debtor and Creditor entered into a stipulation (the "First Stipulation") that canceled the first foreclosure sale, scheduled for October 3, 2013. (Mot. to Dismiss Ex. D, Case No. 14-42691-CEC, ECF No. 9-4 at pp. 2-5.)  In exchange for a $20,000 payment, applied to costs of the sale and accrued interest, the Creditor agreed to provide the Debtor until December 2, 2013 to repay the entire judgment in full. (Id. at pp. 3-4.)  In the First Stipulation, the Debtor "specifically acknowledge[d] and admit[ted] that . . . [the Foreclosure Judgment] was entered in the County Clerks [sic] Office . . . and that there are no defenses, offsets or counterclaims thereto and [the Debtor] waive[d] all defect or irregularities, if any, in the [Foreclosure Judgment]." (Id. at p. 2.)

On December 9, 2013, the Debtor and Creditor entered into a second stipulation (the "Second Stipulation"), modifying the language of the First Stipulation, to extend the Debtor's time to satisfy the Foreclosure Judgment by another sixty days.  (Mot. to Dismiss Ex. D, Case No. 14-42691-CEC, ECF No. 9-4 at pp. 6-8.)  Under the Second Stipulation, the Debtor paid the Creditor $15,000, which was solely in exchange for the extension and not applied to the amount due under the Foreclosure Judgment. (Id. at p. 7.)

On February 7, 2014, the Debtor and Creditor entered into a third stipulation (the "Third

Stipulation") that incorporated the First and Second Stipulations, and further extended the Debtor's time to satisfy the Foreclosure Judgment by an additional sixty days. (Mot. to Dismiss Ex. D, Case No. 14-42691-CEC, ECF No. 9-4 at pp. 9-13.)  Under the Third Stipulation, the Debtor was granted an extension of time until April 11, 2014 to repay the Foreclosure Judgment in full.  In exchange for this stipulation, the Debtor paid $30,000, of which $1,500 was applied to publication fees, $18,500 to partial payment of the interest accrued post-petition on the Foreclosure Judgment, and $10,000 as a payment to the Creditor for the sixty day extension. (Id. at pp. 10-11.)

The Debtor failed to make any further payments, and the full amount of the Foreclosure Judgment became due on April 11, 2014. (Mot. to Dismiss, Case No. 14-42691-CEC, ECF No. 9 ¶ 3; Mem. of Law in Supp., Case No. 14-42691-CEC, ECF No. 24 at p. 3.)   A sale of the Property was scheduled for May 29, 2014. (Mot. to Dismiss, Case No. 14-42691-CEC, ECF No. 9 ¶ 3; Mem. of Law in Supp., Case No. 14-42691-CEC, ECF No. 24 at p. 3.)

The Debtor commenced this case under Chapter 13 of the Bankruptcy Code on May 28, 2014 (the "Petition Date"). (Voluntary Pet., Case No. 14-42691-CEC, ECF No. 1)  On June 18, 2014, the Creditor filed a motion to dismiss the Debtor's Chapter 13 case or, alternatively, to vacate the automatic stay with respect to the Property. (Mot. to Dismiss, Case No. 14-42691-CEC, ECF No. 9.)  The Debtor filed an Affirmation in Opposition to the Creditor's Motion on July 22, 2014. (Aff. in Opp., Case No. 14-42691-CEC, ECF No. 20.)

This Court held a hearing on July 22, 2014, at which the Court directed the parties to file additional submissions.  On July 24, 2014, the Court issued an Order that provided for adequate protection payments in the amount of $6,847.00 per month to be made to the Creditor. (Order, Case No. 14-42691-CEC, ECF No. 22.)  Additionally, the July 24th Order directed the Debtor to

file a proposed Chapter 13 plan by August 1, 2014. Id.

On August 4, 2014, the Creditor filed a memorandum of law in support to the Motion to Dismiss (Mem. of Law in Supp., Case No. 14-42691-CEC, ECF No. 24.), and, on August 6, 2014, the Debtor filed a Chapter 13 plan (the "Proposed Plan"). (Ch. 13 Plan, Case No. 14-42691-CEC, ECF No. 26.)  On August 6, 2014, the Debtor also filed proof of the first adequate protection payment made to the Creditor. (Docs., Case No. 14-42691-CEC, ECF No. 28.)  On August 12, 2014, a hearing was held to consider the Creditor's Motion to Dismiss and confirmation of the Debtor's Proposed Plan.  At that hearing, the Debtor orally responded to the Creditor's memorandum of law, filed August 4, 2014.  On August 21, 2014, the Creditor filed a second memorandum of law to respond to the Debtor's arguments made at the hearing on August 12th.  (Sec. Mem. of Law in Supp., Case No. 14-42691-CEC, ECF No. 31.)

DISCUSSION

Section 1307(c) provides that the court may dismiss a case "for cause" when doing so would be in the best interest of creditors and the estate.  In re Palazzolo, 55 B.R. 17, 17 (Bankr. E.D.N.Y. 1985).  Section 1307(c) provides that cause includes "unreasonable delay by the debtor that is prejudicial to creditors" and "denial of confirmation of a plan under section 1325 of this title."  11 U.S.C. §§ 1307(c)(1), (c)(5).  The Creditor asserts that the Debtor's case should be dismissed, or, alternatively, stay relief should be granted, because the Debtor cannot confirm a plan.  The Creditor's Motion to Dismiss was adjourned to give the Debtor additional time to propose a confirmable plan, and the Debtor's Proposed Plan was considered for confirmation at the August 12th Hearing.

**I.    Confirmation of the Debtor's Proposed Plan**

The debtor carries the burden of showing that a proposed Chapter 13 plan can be

- 4 -

confirmed, which includes an obligation to demonstrate that "the debtor will be able to make all payments under the plan . . . ." 11 U.S.C. § 1325(a)(6).  "Section 1325(a)(6) requires from the court to determine whether the debtor will be able to comply with [the] proposed plan in totality." In re Lynch, No. 08-46308-dem, 2009 WL 1955748, at *2 (Bankr. E.D.N.Y. July 6, 2009); see, e.g., Regan v. Ross, 691 F.2d 81, 86 (2d Cir. 1982); Connelly v. Bath Nat'l Bank, No. 93-CV-6449L, 1995 WL 822677, at *4 (W.D.N.Y. April 13, 1995) ("Feasibility of a plan is an absolute prerequisite to confirmation and by far the most important criterion for the confirmation of a Chapter 13 plan.") (quotation omitted) .  The debtor must show that he or she has sufficient regular income to support the proposed plan.  In re Tornheim, 239 B.R. 677, 685 (Bankr. E.D.N.Y. 1999).  To meet the feasibility requirement, "a debtor's plan must have a reasonable likelihood of success, i.e., that it is likely that the debtor will have the necessary resources to make all payments as directed by the plan."  In re Fantasia, 211 B.R. 420, 423 (B.A.P. 1st Cir. 1997) (citations omitted).  Here, the Proposed Plan is not confirmable because the Debtor has failed to carry the burden of proof with respect to feasibility of the Proposed Plan, as required by § 1325(a)(6).

a.  **The Debtor Lacks Disposable Income to Make Payments to Ms. Kodsi in an Amount Sufficient to Support Feasibility**

By the terms of the Foreclosure Judgment, the Debtor owes Ms. Kodsi $913,003.23, plus costs, fees, and interest since April 29, 2013.  Under § 1325(a)(5)(B)(ii), Ms. Kodsi must be paid an amount not less than the value of the allowed secured claim, over the life of the Proposed Plan.  Based on the amount of the Foreclosure Judgment and nine percent statutory interest accrued to the date of the commencement of the case, the Debtor would have to pay at least $968,626.05 over the life of the plan (not including interest under the Proposed Plan) to satisfy

the Creditor's claim in full. [2]  When plan interest at a rate of 4.25% and the Chapter 13 Trustee's

commissions at a rate of 8.5% are added, the Debtor must pay $1,168,428.50 over the life of the

plan to satisfy Ms. Kodsi's claim in full.[3]  This would require monthly payments for the secured

claim alone in the amount of $19,473.81.  Adding the $500 per month in payments to unsecured

creditors to be made under the Proposed Plan, the Debtor must show that she has the ability to

make payments of at least $19,973.81 per month for a period of sixty months commencing

August 30, 2014 in order for the Proposed Plan to be feasible.  However, by providing for a sixty

month payment period commencing August 30, 2014, the Proposed Plan violates both

§ 1326(a)(1)(A), which requires a debtor to commence making plan payments within thirty days

of the order for relief, and § 1322(d)(1), which states that plan payments may not extend longer

than five years. See In re Nicholes, 184 B.R. 82, 87 (B.A.P. 9th Cir. 1995); accord. In re

Scarborough, 457 Fed. Appx. 193, 201 (3d Cir. 2012).  This case was filed on May 28, 2014, and

therefore the first plan payment was due on June 27, 2014 and the plan must be completed by

May 27, 2019. Given that the Debtor has provided evidence of only $6,840.00 in adequate

protection payments to date, the Debtor would be required to pay $22,066.45 per month

commencing November 1, 2014 in order to complete her plan payments during the applicable

sixty month period.

The Proposed Plan seeks to address this problem by stripping down the Creditor's lien to

the value of its collateral, which the Debtor contends is $850,000; however, the Debtor has failed

---

[2] Calculating nine percent interest from July 26, 2013 to May 28, 2014, the Debtor accrued $89,017.82 in unpaid
interest pre-petition. (Sec. Mem. of Law, Case No. 14-42691-CEC, ECF No. 31 at p. 4.)) Under the terms of the
stipulations between the parties, the Debtor has already paid $33,395 in interest for the pre-petition period. Id. Thus,
$55,622.82 in accrued, unpaid pre-petition interest must be paid over the life of the plan.
[3] The Proposed Plan provides for interest in an "amount based on [the] prime rate plus 1% interest factor." (Ch. 13
Plan, Case No. 14-42691-CEC, ECF No. 26 at ¶ 2.)  According to the Wall Street Journal, the US Prime Rate is
currently 3.25% interest.  See MARKET DATA CENTER, WSJ.COM (last visited: October 10, 2014), available at
http://online.wsj.com/mdc/public/page/2_3020-moneyrate.html.  Thus, the Proposed Plan provides for interest of
4.25% on Ms. Kodsi's claim.

to provide documentation to support any valuation of the Property.  Moreover, bifurcation of the Creditor's claim may not be permissible under Section 1322(c).

When a mortgage matures under the original terms of the contract prior to the completion of a debtor's Chapter 13 plan, Section 1322(c)(2) permits a debtor to provide for full payment of the mortgage over the life of the Chapter 13 plan. In re Wilcox, 209 B.R. 181, 183 (Bankr. E.D.N.Y. 1996) (permitting repayment of a mortgage that matured pre-petition of the life of the plan); accord. In re Latimer, 395 B.R. 304, 307 (Bankr. W.D.N.Y. 2008); In re Keita, No. 12-19970PM, 2012 WL 6195109, at *3 (Bankr. D. Md. Dec. 12, 2012) (providing a list of cases where the debtor was permitted to pay the balance of a fully matured note over the life of the plan).  However, courts disagree whether the language of § 1322(c)(2) overrules the Supreme Court's holding in Nobelman v. American Savings Bank, 508 U.S. 324 (1993), that a Chapter 13 debtor may not bifurcate an under secured claim secured by a debtor's principal residence. Compare In re Paschen, 296 F.3d 1203, 1209 (11th Cir. 2002) (permitting the bifurcation of a short-term mortgage under § 1322(c)(2)), with In re Witt, 113 F.3d 508, 514 (4th Cir. 1997) (rejecting bifurcation).

Here, it is not necessary to address whether bifurcation of the Creditor's claim is permitted under § 1322(c)(2), because the Debtor has not shown that the payments that would be required under the Proposed Plan are feasible even if the Debtor were permitted to pay only the asserted value of the secured portion of the claim over the life of the plan.  To pay Ms. Kodsi the claimed value of the Property, $850,000, plus interest at the rate of 4.25% and Trustee's commissions at a rate of 8.5%, the Debtor would be required to make monthly payments of at least $17,088.88 for sixty months, not including any payment to unsecured creditors.  Given that the Debtor must complete her plan by May 27, 2019, and that the Debtor has paid only $6,840.00

to date, the Debtor would be required to pay $18,860.98 per month to complete her plan under this scenario.

Schedule J shows that the Debtor has $9,098.33 in net monthly income available to fund the Proposed Plan.  Thus, depending on the treatment of the Creditor's claim, the Debtor is between $9,762.65 and $12,968.12 per month short of funding a confirmable plan.  Therefore, even if Ms. Kodsi's claim is limited to the alleged value of the Property, the Debtor cannot make payments sufficient to support a finding of feasibility in this case.

**b.**      **The Debtor's Proposal to Pay Interest Only Pending Resolution of Claims Against Ms. Kodsi is Not Feasible**

The Plan proposes to deal with the shortfall in disposable income by paying interest only on Ms. Kodsi's claim, in the amount of $6,847.00, until certain causes of action which the Debtor claims to have against Ms. Kodsi are resolved.  Upon resolution of these causes of action, the Debtor proposes to pay the principal amount of Ms. Kodsi's claim over the remaining life of the Proposed Plan.  The Debtor argues that the likelihood of future recovery is sufficient to support confirmation of the Proposed Plan.

"As a general rule, bankruptcy courts have found that a plan which provides for a single lump sum payment to creditors, at or near the end of the plan term . . . is not feasible." In re Lynch, No. 08-46308-dem, 2009 WL 1955748, at *3 (Bankr. E.D.N.Y. July 6, 2009); In re Hogue, 78 B.R. 867, 873-74 (Bankr. S.D. Ohio 1987) ("Where the consummation of a Chapter 13 plan hinges entirely upon the happening of a speculative, contingent event, scheduled to occur some three to five years from the date of confirmation, such a plan simply cannot meet the feasibility requirement of § 1325(a)(6).") (footnotes omitted).  The Debtor's alleged claims against Ms. Kodsi have not yet been asserted in any court.  Given the time that would necessarily

be required to commence such an action and prosecute it to a conclusion, issues may arise with respect to the Debtor's ability to make all payments required under the Proposed Plan within the required five-year period. 11 U.S.C. § 1322(d)(1). Because the Debtor proposes to make interest payments only to Ms. Kodsi until the Debtor's alleged claims against her are resolved, the Proposed Plan is not feasible because recovery is too speculative in nature and remote in time to support confirmation.

Moreover, the Debtor's proposal to make a lump sum payment to the Creditor after the resolution of its alleged claims is in contravention of the "equal monthly payments" requirement of § 1325(a)(5)(B)(iii)(I). <u>In re Newberry</u>, No. 07-10170, 2007 WL 2029312, at \*3 (Bankr. D. Vt. July 10, 2007); <u>accord.</u> <u>In re Hamilton</u>, 401 B.R. 539, 543 (B.A.P. 1st Cir. 2009). A debtor is permitted to provide for lump sum payments to a secured creditor only where the creditor has accepted the plan under § 1325(a)(5)(A), which is clearly not this case.

### c.    <u>The Debtor's Alleged Claims Against Ms. Kodsi are Precluded, Waived, Time-Barred, or Inapplicable</u>

Separate from the problems under § 1325(a)(6) and § 1325(a)(5)(B)(iii)(I) inherent in the Debtor's proposal to defer payment of principal on Ms. Kodsi's claim until resolution of the Debtor's alleged claims against her, this Proposed Plan must be rejected because, on the record before this Court, it appears that the Debtor's alleged claims against Ms. Kodsi are precluded, waived, time-barred, or based upon statues that are on their face inapplicable. Thus, even if these alleged claims were considered as a potential source of funding, the Proposed Plan cannot be confirmed.

The Debtor alleges that Ms. Kodsi has violated (1) the federal Truth in Lending Act ("TILA"), (2) the federal Home Ownership and Equity Protection Act ("HOEPA"), (3) New

York Banking Law § 6-l, and (4) New York usury laws—both civil usury under New York General Obligations Law ("GOL") § 5-501 and New York Penal Law § 190.40. Each of these alleged claims is barred by Rooker-Feldman and res judicata. Any claims not barred were waived by the Debtor in the First Stipulation. Moreover, each of these claims is either inapplicable on the alleged facts of this case or barred by the applicable statute of limitations.

### i. *The Debtor is barred by the Rooker-Feldman Doctrine and Principles of Res Judicata*

The Rooker-Feldman doctrine is a jurisdictional tenet that "strip[s] federal subject matter jurisdiction over lawsuits that are, in substance, appeals from state court decisions." Book v. Mortgage Elec. Registration Systems, 608 F.Supp.2d 277, 288 (D.Conn. 2009) (citing Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005)). This doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

"Courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the Rooker-Feldman doctrine." Feinstein v. Chase Manhattan Bank, No. 06 CV 1512, 2006 WL 898076, at *2 (E.D.N.Y. Apr. 4, 2006); accord. Russo v. GMAC Mortg., LLC, 549 Fed. Appx. 8, 9 (2d Cir. 2013); Rene v. Citibank, N.A., 32 F.Supp. 2d 539, 543 (E.D.N.Y. 1999). In In re GEL, LLC, 495 B.R. 240, 246-47 (Bankr. E.D.N.Y. 2012), this Court addressed a debtor seeking to attack a foreclosure judgment on the grounds that the terms of the underlying loan violated New York usury laws. This Court held that the Rooker-Feldman doctrine acted as a jurisdictional bar to a collateral attack on the foreclosure judgment. Id. at 247. The reasoning in GEL, LLC is equally applicable to the Debtor's claims under TILA,

HOEPA, and New York Banking Law § 6-l.  Each claim constitutes a defense or counterclaim to the Creditor's claim to foreclose on the Property, and, therefore, constitutes an attack upon the validity of the Foreclosure Judgment.  Therefore, under <u>Rooker-Feldman</u>, this Court lacks jurisdiction to consider these claims.

Even if this Court had jurisdiction to review the validity of the Foreclosure Judgment, res judicata would bar the Debtor's claims that the underlying note and mortgage are void under TILA, HOEPA, New York usury laws, and New York Banking Law § 6-l.  "Res judicata, or claim preclusion, operates to prevent a party from re-litigating a claim after the claim has already been decided by a court of competent jurisdiction." <u>Charell v. Gonzalez (In re Gonzalez)</u>, 241 B.R. 67, 72 (S.D.N.Y. 1999); <u>see</u> <u>also</u> <u>Brown v. Felsen</u>, 442 U.S. 127, 131 (1979).  To determine the preclusive effect of a state court decision, this Court must apply the standard used by the state court in which the decision was rendered.  28 U.S.C. § 1738; <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 293 (2005); <u>In re Fischer</u>, 252 B.R. 603, 613 (Bankr. E.D.N.Y. 2000) ("[U]nder the 'transactional analysis' approach adopted by the [New York State] Court of Appeals, the doctrine of *res judicata* also operates to preclude the litigation of matters that could have or should have been raised in a prior proceeding arising from the same 'factual grouping,' 'transaction,' or 'series of transactions.' ") (citations omitted) (emphasis in original).

"Under the doctrine of res judicata . . . a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action." <u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 286-287 (2d Cir. 2002) (noting "no discernible difference" between New York and federal application of res judicata).  In New York, res judicata "also applies to defenses that could have been litigated, including defenses to a foreclosure." <u>Yeiser v. GMAC Mortg. Corp.</u>, 535 F.Supp. 2d 413, 421 (S.D.N.Y. 2008).

The Debtor contends that New York's permissive counterclaim rule trumps the doctrine of res judicata because claims such as those the Debtor seeks to pursue were not required to be raised, nor were they actually litigated in the Foreclosure Action. "While New York does not have a compulsory counterclaim rule . . . a party is not free to remain silent in an action in which he is the defendant and then bring a second action seeking relief inconsistent with the judgment in the first action by asserting what is simply a new legal theory." Henry Modell and Co., Inc. v. Minister, Elders and Deacons of the Reformed Protestant Dutch Church, 68 N.Y.2d 456, 461 (1986). New York's doctrine of res judicata requires a court to analyze whether the second action impairs the rights or interests established in the prior action. See, e.g., id. at 461-62; Classic Autos. v. Oxford Resources Corp., 204 A.D.2d 209, 209 (N.Y. Sup. Ct. App. Div. 1st Dep't 1994). In this case, the Debtor seeks to attack the notes and mortgages underlying the Foreclosure Judgment, and, therefore, any successful challenge would impair the validity of the Foreclosure Judgment. Thus, New York's permissive counterclaim rule notwithstanding, the Debtor is barred from revisiting issues that would necessarily undermine the relief granted in the Foreclosure Action. Any action to void or offset the Debtor's obligations to Ms. Kodsi is barred by the Rooker-Feldman doctrine and principles of res judicata; therefore, the Debtor's alleged claims are insufficient under any scenario to meet the requirements of the feasibility test under § 1325(a)(6).

### ii.   *The Debtor's Claims Have Been Waived By the First Stipulation*

The First Stipulation states:

[t]he [Debtor] hereby specifically acknowledges and admits that a Judgement [sic] of Foreclosure and Sale was signed in this action on July 26, 2013 and that said Judgement [sic] of Foreclosure and Sale was entered in the County Clerks [sic] Office, Kings County, on August 7, 2013 and that *there are no defenses, offsets or counterclaims thereto and said [Debtor] waives all defect or irregularities*, if any, in the Judgement [sic] of Foreclosure and Sale.

(Mot. to Dismiss Ex. D, Case No. 14-42691-CEC, ECF No. 9-4 at p. 2, ¶ 2 (emphasis added).)

The Debtor contends—without citing case law—that the broad language used in the First

Stipulation is insufficient to waive claims of usury and claims under New York Banking Law §

6-l. (Tr. of Hr'g on August 12, 2014, Case No. 14-42691-CEC, ECF No. 34, at p.17, line 5.)

However, New York courts have consistently held that a borrower can waive claims of usury

absent express language identifying the claims to be waived. <u>See, e.g.</u>, <u>In re Higgins</u>, 270 B.R.

147, 156 (Bankr. S.D.N.Y. 2001) ("[I]n New York State courts '[i]t has been established that

usury is a personal defense which may be waived by the borrower.'") (citation omitted);

<u>Hammelburger v. Foursome Inn Corp.</u>, 54 N.Y.2d 580, 592 (1981) ("[U]ntil the Legislature

otherwise provides, a valid estoppel certificate executed by a mortgagor and relied upon in good

faith by the assignee of the mortgage will preclude the assertion of usury, whether civil or

criminal, as a complete defense.") (footnotes omitted); <u>Central Funding Co v. Deglin</u>, 67 A.D.2d

673, 674 (App. Div. 2d Dep't 1979) ("In our opinion, the stipulation in which respondents

admitted their debt, '*without defense, offset or counterclaim thereto*', and the default judgment

entered thereon, completely barred assertion of the defense of usury.") (emphasis added).

Thus, it is clear that, pursuant to the language of the First Stipulation, the Debtor has

waived any and all counterclaims or defenses regarding state and federal lending law claims. <u>See</u>

<u>Higgins</u>, 270 B.R. at 156.

### iii.    <u>The Debtor Cannot State a Valid Cause of Action under Federal Law</u>

Even assuming that an action by the Debtor against Ms. Kodsi under either TILA or

HOEPA were not barred by <u>Rooker-Feldman</u>, res judicata, or by the waiver contained in the First

Stipulation, the Debtor cannot state a cause of action against the Creditor under either of those

statutes.

The Debtor relies on <u>Lopez v. Delta Funding Corp.</u>, No. CV 98-7204 CPS, 1998 WL 1537755 (E.D.N.Y. Dec. 23, 1998), for the proposition that both TILA and HOEPA apply to the transaction between the Debtor and Creditor.[4]  However, HOEPA and TILA cannot apply because residential mortgage transactions are excepted from the definition of a HOEPA loan. <u>See</u> 15 U.S.C. § 1602(aa); <u>Lopez</u>, 1998 WL 1537755, at *5.  Additionally, HOEPA and TILA cannot apply because Ms. Kodsi is not a "creditor," as defined in 15 U.S.C. § 1602(f).[5]  Even if TILA and HOEPA were applicable, a borrower cannot rescind any loan that qualifies as residential mortgage transaction, and, any private cause of action, brought by the Debtor for violations of either TILA or HOEPA, would be barred by the applicable statutes of limitations.  11 U.S.C. §§ 1635(f), 1640(e).

*1.*     *<u>HOEPA and TILA Do Not Apply to Residential Mortgage Transactions</u>*

"To prevail on the merits of [a] HOEPA claim[] . . . [plaintiff] must first establish that [its] mortgage loan with defendant [is a] mortgage loan[] within the definition set forth in 15 U.S.C. § 1602(aa)." <u>Lopez</u>, 1998 WL 1537755, at *5.  Under subsection (aa) of § 1602, a mortgage is defined as "a consumer credit transaction . . . other than a residential mortgage transaction, a reverse mortgage, or a transaction under an open end credit plan . . . ." 15 U.S.C. § 1602(aa).[6]  The statute providing for a private cause of action for violations of TILA also states

---

[4] At the hearing on August 12, the Debtor also asserted that, under <u>Lopez</u>, none of the alleged claims against Ms. Kodsi are barred by either the <u>Rooker-Feldman</u> doctrine or principles of res judicata; however, neither <u>Rooker-Feldman</u> nor res judicata is discussed in Lopez. (Tr. of Hr'g on August 12, 2014, Case No. 14-42691-CEC, ECF No. 34 at p.13.)  Moreover, even if the alleged claims were not barred, any claim under TILA and HOEPA must fail because TILA and HOEPA do not apply to this transaction.

[5] Section 1100A of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 (the "Dodd-Frank Act") affected the numbering of 15 U.S.C. § 1602. Pub. L. 111-203, July 21, 2010, 124 Stat. 1376, 2106.  Under the Dodd-Frank Act, subsections (b) through (bb) were redesignated as (c) through (cc), respectfully.  Unless otherwise noted, all references to subsections of 15 U.S.C. § 1602 will be provided using the pre Dodd-Frank Act citations.

[6] Section 1431 of the Dodd-Frank Act amended the definition of a "high-cost mortgage" under § 1602(aa) to strike the residential mortgage transaction exemption; however, the sale of the Property was completed prior to the enactment of the Dodd-Frank Act. Pub. L. 111-203, July 21, 2010, 124 Stat. 1376, 2157; <u>see</u> 15 U.S.C. § 1602(bb) (2012).  Under Section 1400(c) of the Dodd-Frank Act, provisions under Title XIV, which includes Section 1431,

"[t]his section does not apply to—(1) a residential mortgage transaction." 15 U.S.C. § 1635(e); see also In re Clayton, 93-2816, 1994 WL 397639, at *1 (5th Cir. July 11, 1994) ("TILA allows the unilateral right to cancel certain credit transactions *secured by a non-purchase money mortgage* on the consumer's homestead.") (emphasis added); Grimes v. Fremont General Corp., 785 F.Supp.2d 269, 284-285 (S.D.N.Y. 2011) (finding no right to rescind a residential mortgage transaction).

Under § 1602(w), a "residential mortgage transaction" is defined as "a transaction in which a mortgage . . . or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition . . . of such dwelling." The notes and mortgages held by Ms. Kodsi were provided as payment for the sale of the Property, without which the sale would not have occurred. Thus, the sale is a residential mortgage transaction under § 1602(w). Since residential mortgage transactions are excepted from the definition of a HOEPA loan, the Debtor cannot bring an action under that chapter because the provisions of TILA and HOEPA do not apply.

### 2. *Ms. Kodsi is Not a Creditor Subject to TILA and HOEPA Claims*

For a loan to be considered a HOEPA loan, the mortgage at issue must also be "a consumer credit transaction with a 'creditor,' as defined in 15 U.S.C. § 1602(f)." Lopez v. Delta Funding Corp., No. CV 98-7204 CPS, 1998 WL 1537755, at *5 (E.D.N.Y. Dec. 23, 1998). Under § 1602(f), a "creditor" is any person who regularly extends consumer credit, "[a]ny person who originates 2 or more mortgages referred to in subsection (aa) of this section in any 12-month

---

were to take effect at the earlier of the effective date of final regulations implementing that section or January 21, 2013. Pub. L. 111-203, July 21, 2010, 124 Stat. 1376, 2136 (date calculated by measuring eighteen months from the designated transfer date, defined in § 311 of the Dodd-Frank Act as one year after the enactment date of July 21, 2010). Given the language of Section 1400(c), and due to the fact that retroactive application of federal statutes has been traditionally disfavored, the amendments to § 1602 in Section 1431 have no application in this case. See Landgraf v. USI Film Products, 511 U.S. 244, 280 (1994) ("if the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.").

period or any person who originates 1 or more such mortgages through a mortgage broker."
Because the both mortgages are residential mortgage transactions—thus not mortgages subject to
§ 1602(aa)—neither qualifies as a HOEPA loan.  Accordingly, the Creditor is not a "creditor"
under § 1602(f) and any cause of action that the Debtor seeks to assert under either TILA or
HOEPA is unavailable.

     3.     <ins>*The Debtor is Time-Barred From Bringing an Action for Violations of Either*</ins>
               <ins>*TILA or HOEPA*</ins>

     For violations of TILA and HOEPA, 15 U.S.C. § 1635 provides consumers with a right
of rescission and 15 U.S.C. § 1640 provides consumers with a private cause of action for actual
and statutory damages.  <ins>See, e.g.</ins>, <ins>Beach v. Ocwen Fed. Bank</ins>, 523 U.S. 410, 411-12 (1998)
(applying §§ 1635, 1640 to TILA violations); <ins>Velardo v. Fremont Investment & Loan</ins>, 298 Fed.
Appx. 890, 891-92 (11th Cir. 2008) (applying to both TILA and HOEPA violations); <ins>Lopez v.
Delta Funding Corp.</ins>, No. CV 98-7204 CPS, 1998 WL 1537755 (E.D.N.Y. Dec. 23, 1998)
(applying to HOEPA violations).

     Even if the loans at issue were subject to TILA or HOEPA, any action by the Debtor to
rescind the loans under § 1635 is now barred by its three-year statute of limitations. <ins>See</ins> 15
U.S.C. § 1635(f); <ins>Beach v. Ocwen Fed. Bank</ins>, 523 U.S. 410, 412 (1998) ("[Section] 1635(f)
completely extinguishes the right of rescission at the end of the 3-year period.").  A cause of
action under § 1635 accrues at the earlier of when the contract is consummated or upon the sale
of the property.  15 U.S.C. § 1635(f).  Here, the Debtor purchased the Property on February 7,
2008, and the Debtor's right to rescind the contract pursuant to § 1635 expired on February 7,
2011.  Thus, no matter how the transaction is classified, the Debtor cannot avail herself of § 1635
to avoid the debt owed to the Creditor because that action is barred by its statute of limitations.

Congress imposed a one-year statute of limitations for private causes of action seeking damages under § 1640. 15 U.S.C. § 1640(e) (requiring action to be commenced "within one year from the date of the occurrence of the violation."); <u>Velardo</u>, 298 Fed. at 892 ("The violation 'occurs' when the transaction is consummated. Nondisclosure is not a continuing violation . . . ."). Any cause of action the Debtor may have brought against Ms. Kodsi accrued upon closing of the sale of the Property, and has, therefore, long since expired under § 1640(e).[7] Thus, any action to void the loan with Ms. Kodsi under TILA and HOEPA would be insufficient to meet the requirements of the feasibility test under § 1325(a)(6).

### iv.     *The Debtor Cannot State a Valid Cause of Action under New York Law*

Even if an action by the Debtor against Ms. Kodsi to attack the loans under either New York Banking Law § 6-l or New York usury laws were not barred by res judicata or <u>Rooker-Feldman</u>, the Debtor cannot state a cause of action under those provisions.

### 1.     *New York Banking Law Section 6-l Does Not Apply*

The Debtor relies on <u>Balsam v. Fioriglio</u>, 30 Misc.3d 400 (N.Y. Sup. Ct. Kings Cty. 2010) ("<u>Balsam I</u>"), for the proposition that both New York Banking Law § 6-l applies to the transaction between the Debtor and Creditor. In <u>Balsam I</u>, the court denied the lender's motion for sale of the property and vacated a prior order granting summary judgment in favor of the lender because the borrower should have been permitted to interpose a defense based on § 6-l. <u>Id.</u> at 403-404. In <u>Balsam I</u>, a New York resident had borrowed $60,000 from an individual, secured by mortgage on the borrower's primary residence. <u>Id.</u> at 401. At closing, the borrower

---

[7] Notwithstanding the unavailability of a private cause of action, § 1640(e) "does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of occurrence of the violation as a matter of defense" to the collection action. However, under <u>Rooker-Feldman</u>, the Debtor cannot interpose § 1640 as a defense at this point in time. <u>Velardo</u>, 298 Fed. Appx. at 892; <u>Goodman ex rel. Goodman v. Sipos</u>, 259 F.3d 1327, 1332 (11th Cir. 2001) (holding that <u>Rooker-Feldman</u> doctrine is broad enough to bar all federal claims that were, or should have been, central to the state court decision).

was charged fees in excess of the limit prescribed in § 6-l. Id. at 402.  In holding that New York Banking Law § 6-l applied to individual lenders, the Balsam I court reasoned that an individual lender could not avail itself of the benefits of the New York Banking Laws without also subjecting itself to its penalties. Id. at 403 (relying on the purpose of the Banking Laws, as stated in New York Banking Law § 1).

However, Balsam I only permitted the borrower to raise a violation of § 6-l as a defense to foreclosure. Id. at 403 ("Accordingly, defendants may have a meritorious defense . . ."). After the trial in the foreclosure action, the court reversed its position, holding that § 6-l did not apply to individual lenders.  Balsam v. Fioriglio, 41 Misc.3d 361, 364 (N.Y. Sup. Ct. Kings Cty. 2013) ("Balsam II").  In Balsam II, the court held that the specific definition of "lender" in § 6-l—which exempted individuals who originated less than three loans in a one year period—was controlling despite the language of general applicability contained in Banking Law § 1. Id. at 364-365.

Even if § 6-l did apply, the Debtor is barred by the statute of limitations.  See N.Y. BANKING LAW § 6-l(6).  In its relevant part, § 6-l(6) states "[a] private action against the lender or mortgage broker pursuant to this section must be commenced within six years of origination of the high-cost home loan."  The loan at issue was originated in February 2008.  As such, any action brought by the Debtor was foreclosed when the statute of limitations expired in February 2014.[8]  Therefore, any action to void or offset the loans held by Ms. Kodsi under New York Banking Law § 6-l is insufficient to meet the requirements of the feasibility test under § 1325(a)(6).

---

[8] Similarly, the Debtor's ability to raise § 6-l as a defense to the Foreclosure Action is barred by Rooker-Feldman and res judicata. See N.Y. R.P.A.P.L. § 1302(2).

2.    _New York General Obligations Law Section 5-501 Does Not Apply_

The Debtor also contends that the loans made by Ms. Kodsi are void, under GOL § 5-511, because of violations of New York civil usury laws.  Additionally, the Debtor alleges a cause of action for damages against Ms. Kodsi, pursuant to GOL § 5-521, arising from the same usurious conduct.

In its pertinent part, GOL § 5-501 states that "[n]o person or corporation shall, directly or indirectly, charge, take or receive any money, goods or things in action as interest on the loan or forbearance of any money, goods or things in action at a rate exceeding" sixteen percent per annum.  See, e.g., N.Y. GEN. OBL. LAW § 5-501(2); N.Y. BANKING LAW § 14-a.  However, "[t]he law in New York is that a purchase-money mortgage does not constitute a 'loan or forbearance' within the meaning of [GOL] § 5-501. . . ." Skidelsky v. Merendino, 133 A.D.2d 149, 149 (App. Div. 2d Dep't 1987); accord. Szerdahelyi v. Harris, 67 N.Y.2d 42, 46 (1986) ("Purchase-money mortgages constitute a narrow exception to the restrictions on interest found in the usury laws . . . ."); Mandelino v. Fribourg, 23 N.Y.2d 145, 151 (1968) ("There is no usury in the normal purchase-money transaction where a seller demands a higher price because the consideration is not all in cash.") (quotations omitted).

"A purchase-money mortgage is generally defined as a mortgage executed at the time of purchase of the land and contemporaneously with the acquisition of the legal title, or afterward, but as a part of the same transaction to secure an unpaid balance of the purchase price." Szerdahelyi, 67 N.Y.2d at 46 (quotations omitted).  In this case, the term purchase-money mortgage clearly encompasses the mortgages received by Ms. Kodsi as collateral for the sale of the Property.  Without either mortgage, the Debtor would not have been able to purchase the Property—the notes and mortgages were the only consideration given to Ms. Kodsi at closing.

Further, each mortgage was executed contemporaneously with the sale of the Property. Thus, both mortgages are purchase-money mortgages under New York law; Ms. Kodsi is exempt from the interest restrictions contained in § 5-501; and the Debtor, therefore, cannot bring an action under either § 5-511 or § 5-521, which require a violation of § 5-501.

Any independent action for damages under § 5-521 would be untimely under New York's one-year statute of limitations. <u>See</u> N.Y. C.P.L.R. § 215 ("The following actions shall be commenced within one year . . . (6) An action to recover any overcharge of interest or to enforce a penalty for such overcharge."). Therefore, any action to void the loan or recover damages from Ms. Kodsi under New York's civil usury laws is insufficient to meet the requirements of the feasibility test under § 1325(a)(6).

>    *3.*     *New York Penal Law Section 190.40 Does Not Apply*

The Debtor contends that the loans made by Ms. Kodsi are void because the Creditor charged a rate of interest that was criminally usurious under NY Penal Law § 190.40. However, there is no private cause of action for violations of § 190.40. <u>Funding Group, Inc. v. Water Chef, Inc.</u>, 19 Misc.3d 483, 491 (N.Y. Sup. Ct. App. Term 2008) ("There is no specific statutory authority for voiding a loan that violates the criminal usury statute. Although the Legislature authorized the pleading of criminal usury as a defense by a corporation . . . it made no change to the provisions of General Obligations Law § 5-511 which declares a usurious loan 'void' and orders 'the same to be surrendered and canceled.'"); <u>accord.</u> <u>In re Venture Mortgage Fund, L.P.</u>, 282 F.3d 185, 189 (2d Cir. 2002) ("Nothing we see in the criminal usury statute . . . provides for voiding, and it is unclear whether the Legislature intended that criminally usurious loans of $250,000 or greater be voided.").

Therefore, any action to void the loans made by Ms. Kodsi under the principles of

criminal usury is insufficient to meet the requirements of the feasibility test under § 1325(a)(6).

## II.    Dismissal is Warranted Because the Debtor Cannot Set Forth Any Feasible Plan for Confirmation

"[A] central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life with a clear field for future effort . . . ." Grogan v. Garner, 498 U.S. 279, 286 (1991) (citation omitted).  However, that objective must be balanced against a debtor's ability to financially rehabilitate within the constraints of the Code. See In re Tornheim, 239 B.R. 677, 686 (Bankr. E.D.N.Y. 1999).

In this case, the Debtor has not proposed a viable Chapter 13 plan.  It is apparent that the Debtor has the ability to pay less than fifty percent of the required amount to confirm a plan and that the Debtor has proposed no means to make up that shortfall.  Accordingly, the continuation of this case constitutes an unreasonable delay that is prejudicial to creditors under § 1307(c)(1). See In re Palazzolo, 55 B.R. 17, 17 (Bankr. E.D.N.Y. 1985) (denying confirmation and dismissing case for failure to provide for full repayment of past due mortgage in Chapter 13 plan); In re La Brada, 132 B.R. 512, 515 (Bankr. E.D.N.Y. 1991) (granting lift stay relief in similar circumstances); See, e.g., In re Dempsey, 247 Fed. Appx. 21, 25 (7th Cir. 2007) (affirming a Chapter 13 case dismissed on denial of confirmation and unreasonable delay grounds); In re Watkins, No. 06-CV-1341 (DGT), 2008 WL 708413 (E.D.N.Y. Mar. 14, 2008) (same).

<u>CONCLUSION</u>

For the reasons set forth above, confirmation of the Debtor's Proposed Plan is denied and the Creditor's Motion to Dismiss is granted.  A separate order will issue.



Dated: Brooklyn, New York
       October 10, 2014

Carla E. Craig
United States Bankruptcy Judge